# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | | |
|---|---|---|
| VICKEY GERARDOT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 1:15-CV-116-TLS |
| | ) | |
| LIFE CARE CENTERS OF AMERICA, | ) | |
| INC., d/b/a LIFE CARE CENTER OF | ) | |
| FORT WAYNE, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

The Plaintiff, Vickey Gerardot, is suing her prior employer, Life Care Centers of America, Inc., d/b/a Life Care Center of Fort Wayne, for retaliatory discharge. After the Plaintiff amended her complaint, the Defendant moved to dismiss it for failure to state a claim, asserting that the Amended Complaint did not plead facts that would support an exception to the employment at will doctrine. The Plaintiff has requested to amend the complaint further, but the Defendant asserts that her proposed amendment would be futile because it would not cure the deficiencies of her prior pleadings. The issue before the Court is whether the pleaded factual allegations allow the Court to draw the reasonable inference that the Defendant is liable for wrongful discharge under Indiana common law.

## COMPLAINT ALLEGATIONS

The facts are derived from the latest proposed pleading, attached as Exhibit A to the Plaintiff's Motion to Substitute [ECF No. 24-1].

The Plaintiff worked as a registered nurse for the Defendant's nursing home facility. On

July 25, 2013, the Plaintiff witnessed a wheelchair bound resident being sexually assaulting by another resident. She took the victimized resident to the administrator's office for the resident's protection and to report what she observed. The administrator was not available, so the Plaintiff and resident met with one of the facility's social workers and reported the incident. Within minutes, the Plaintiff also reported the incident to the administrator. Later, she made a report to the Indiana State Board of Nursing and, eventually, to the Indiana Attorney General.

The day immediately following the incident, the administrator, along with the director of nursing, told the Plaintiff that her employment was being terminated. The Plaintiff was informed that the reason for the termination was that the Plaintiff had made a "med error." When the Plaintiff asked for clarification, she was not provided any information about the nature of the error or when it occurred. Neither was she provided any termination paperwork. She asserts that the Defendant failed to follow its progressive discipline policy when addressing the alleged medical error, whereas similarly situated employees who had not reported resident abuse received progressive discipline. The Plaintiff alleges that the stated reason for her termination was false and pretextual, and that she was actually terminated in retaliation for reporting the abuse of a resident of the Defendant's facility.

## ANALYSIS

"A motion to dismiss pursuant to [Rule] 12(b)(6) challenges the viability of a complaint by arguing that it fails to state a claim upon which relief may be granted." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014). To survive a 12(b)(6) motion to dismiss, "a complaint must allege 'sufficient factual matter to state a claim to relief that is plausible on its

face.'" *Gogos v. AMS Mech. Sys., Inc.*, 737 F.3d 1170, 1172 (7th Cir. 2013) (alterations omitted) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Because the Court's jurisdiction over this case is predicated upon diversity, *see* 28 U.S.C. § 1332, it "must apply the law of the state as it believes the highest court of the state would apply it if the issue were presently before that tribunal." *State Farm Mut. Auto. Ins. Co. v. Pate*, 275 F.3d 666, 669 (7th Cir. 2001). "When the state Supreme Court has not decided the issue, the rulings of the state intermediate appellate courts must be accorded great weight, unless there are persuasive indications that the state's highest court would decide the case differently." *Id.*

"Indiana follows the doctrine of employment at will, under which employment may be terminated by either party at will, with or without a reason." *Ogden v. Robertson*, 962 N.E.2d 134, 145 (Ind. Ct. App. 2012) (citing *Baker v. Tremco*, 917 N.E.2d 650, 653 (Ind. 2009)). Employment in Indiana is strongly presumed to be at will. *Orr v. Westminster Village N., Inc.*, 689 N.E.2d 712, 717–18 (Ind. 1997). There are only three recognized exceptions to the employment at will doctrine. *Ogden*, 962 N.E.2d at 145. At issue in this case is the public policy exception for contravention of a clear statutory expression of a right or duty. *Id.* The Indiana Supreme Court established this public policy exception in *Frampton v. Central Indiana Gas Co.*, 297 N.E.2d 425 (Ind. 1973), where an employee was terminated for filing a worker's compensation claim. The exception was expanded to include the situation where an employer discharges an employee for refusing to commit an illegal act for which the employee would be personally liable. *McClanahan v. Remington Freight Lines*, 517 N.E.2d 390, 393 (Ind. 1988)

3

(permitting a truck driver to pursue a cause of action against an employer who fired him when he refused to haul a load that exceeded the amount allowed on Illinois roads, an illegal act for which the employee would have been personally liable). In *McClanahan*, the court recognized the exception because not allowing the truck driver "any legal recourse under these circumstances would encourage criminal conduct by both the employee and the employer." *Id.* Nevertheless, the Indiana Supreme Court has reaffirmed the narrowness of the public policy exception. *Meyers v. Meyers*, 861 N.E.2d 704, 706 (Ind. 2007) ("[T]he decisions during the intervening thirty years have made it plain that this language is intended to recognize quite a limited exception.").

The public policy exception is not available where the Indiana General Assembly has provided a remedy for violation of a statutory right within the statute itself. *Coutee v. Lafayette Neighborhood Housing Servs., Inc.*, 792 N.E.2d 907, 911 (Ind. Ct. App. 2003) (finding no common law claim for retaliatory discharge where an employee acted under a whistle blower statute that protected employees from retaliation and provided a remedy for employees who were disciplined for reporting under the statute); *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 503–04 (7th Cir. 1999) (holding that the Supreme Court of Indiana would be unlikely to expand the at-will exceptions where an employee wrongfully discharged for engaging in an activity protected by the Indiana Occupational Safety and Health Act had adequate relief under the statute). In other words, where the legislature has spelled out the public policy and the remedy, the remedy is already part of the public policy and does not require a common law supplement. *Combs v. Ind. Gaming Co.*, No. NA99–0154–C–H/S, 2000 WL 1716452, at *2 (S.D. Ind. Aug. 30, 2000).

The Plaintiff maintains that she had a statutory obligation, under Indiana Code § 12-10-3-9, to report what she observed. That statute provides:

> (a) An individual who believes or has reason to believe that another individual is an endangered adult shall make a report under this chapter.
>
> (b) If an individual is required to make a report under this chapter in the individual's capacity as a member of the staff of a medical or other public or private institution, school, hospital, facility, or agency, the individual shall immediately notify the individual in charge of the institution, school, hospital, facility, or agency, or the individual's designated agent, who also becomes responsible to report or cause a report to be made.
>
> (c) This section does not relieve an individual of the obligation to report on the individual's own behalf, unless a report has already been made to the best of the individual's belief.

Ind. Code § 12-10-3-9. The contents of the report, and the entities to whom they "shall be communicated," are set forth in § 12-10-3-10. These entities include the adult protective services unit, a law enforcement agency, or the statewide toll free number established for such purposes. *Id.* The adult protective services units and the toll free hotline both exist by virtue of the statute. *See id.* § 12-10-3-7 (requiring that adult protective services be provided in each county, and allowing for contracting with prosecuting attorneys and other qualified entities); *id.* § 12-10-3-12 (requiring establishment of a "statewide toll free telephone line continuously open to receive reports of suspected neglect, battery, or exploitation"). The duties of adult protective services units that have reason to believe an individual is an endangered adult are set forth in § 12-10-3-8.

The statute also provides that "[a]n employer may not discharge, demote, transfer, prepare a negative work performance evaluation, or reduce benefits, pay, or work privileges, or take any other action to retaliate against an employee who in good faith files a report under this chapter." *Id.* § 12-10-3-11(c). Despite the clear anti-retaliation language, the Court could locate no method of statutory redress, and the parties have not pointed to one, for individuals who believe their employer retaliated against them for filing a report under § 12-10-3. Thus, although

5

the Indiana General Assembly has established the right of certain employees to report suspected endangerment without retaliation, it did not provide any remedies that would foreclose a common law supplement. With no statutory remedy, the Court considers whether the Indiana Supreme Court would recognize a common law supplement under the circumstances alleged in the Plaintiff's complaint.

The Indiana Supreme Court has noted that outside of *Frampton*, which was grounded "on express statutory language," the "cases permitting retaliatory discharge actions have generally involved plaintiffs allegedly terminated in retaliation for refusing to violate a legal obligation that carried penal consequences." *Meyers*, 861 N.E.2d at 707 (citing examples). While criminal consequences are not at issue here,[1] the Court finds this case to be more like *Frampton* than *McClanahan*. In *Frampton*, the court noted the worker's compensation act embraced "fundamental, well-defined and well-established policy" related to the transfer of economic loss due to industrial accidents and injuries. 297 N.E.2d at 427. "In order for the goals of the [Workmen's Compensation] Act to be realized and for public policy to be effectuated, the employee [had to] be able to exercise his right in an unfettered fashion without being subject to reprisal." *Id.*

> If employers are permitted to penalize employees for filing workmen's compensation claims, a most important public policy will be undermined. The fear of being discharged would have a deleterious effect on the exercise of a statutory right. Employees will not file claims for justly deserved compensation—opting, instead, to continue their employment without incident. The end result, of course, is that the employer is effectively relieved of his obligation.

---

[1] Because the statute creates an affirmative duty, a failure to report could arguably expose one to civil liability under a theory of negligence.

*Id.* Accordingly, "strict employer adherence [was] required" *id.*, as evidenced by the Act's legislative language: "No contract or agreement, written or implied, no rule, regulation or other device shall, in any manner, operate to relieve any employer in whole or in part of any obligation created by this act." *Id.* at 427–28 (quoting Ind. Code § 22-3-2-15). The court found discharge for filing a worker's compensation claim was actionable, because "the threat of discharge" was a "'device' within the framework of 22-3-2-15, and hence, in clear contravention of public policy." *Id.* at 428.

Like *Frampton*, this case involves express statutory language: "An individual who believes or has reason to believe that another individual is an endangered adult shall make a report." Ind. Code § 12-10-3-9. The question is whether Indiana's endangered adult statute "embraces" such a "fundamental, well-defined and well-established policy" that "strict employer adherence is required." *Frampton*, 297 N.E.2d at 427.

The Court first considers the type of public policy that is embodied in the statutory scheme. Indiana's Family and Social Services Administration website informs that the "Adult Protective Services (APS) Program was established to investigate reports and provide intervention and protection to vulnerable adults who are victims of abuse, neglect, or exploitation." *Adult Protective Services*, http://www.in.gov/fssa/da/3479.htm (last visited Apr. 20, 2016). Immediately above this explanation, it warns in bold print: "*ALL PERSONS ARE REQUIRED BY LAW TO REPORT ALL CASES OF SUSPECTED ABUSE, NEGLECT, OR EXPLOITATION TO EITHER THE NEAREST APS OFFICE OR TO LAW ENFORCEMENT.*" *Id.* APS investigators operate out of the offices of county prosecutors throughout Indiana, and are charged with investigating complaints or causing complaints to be

investigated by law enforcement. *Id.* The eighteen APS Units are located throughout the state. For example, the Vanderburgh County Prosecutor's Office houses an APS Unit that serves six counties. *Adult Protective Services*, http://www.vanderburghprosecutor.org/?page_id=60 (last visited Apr. 20, 2016). The Vanderburgh County Prosecutor's website refers to abuse of the elderly as "a national epidemic," and explains the options available to report abuse, including the toll free number for The Elder Abuse Hotline. *Id.* Sentiments such as this, describing the State's interest in protecting Indiana's growing population of people aged 65 and older, and urging citizens to report abuse and neglect, are echoed on other County Prosecutor websites.[2] Presumably in an effort to encourage reporting, the legislature included a provision that protects any person who makes a good faith report or participates in an investigation from facing civil or criminal liability. *See* Ind. Code § 12-10-3-11(a) (the immunity provision). The State of Indiana has identified some of its most vulnerable citizens and expressed, through statute, a clear policy that would have all of its citizens take responsibility for their protection through mandatory reporting. Special investigating units are in place to respond to these well-defined reporting obligations.

It would be difficult to conclude that the General Assembly did not desire strict compliance with the reporting requirements, particularly by staff at medical facilities, who are specifically identified in the statute. *See id.* § 12-10-3-9(b) (referring to individuals "required to make a report under this chapter in the individual's capacity as a member of the staff of a

---

[2] *See, e.g.,* Jeremy Mull & Patricia Martin, *Adult Protective Services*, http://www.clarkprosecutor.org/html/aps/aps.htm (last visited Apr. 28, 2016); *Adult Protective Services*, http://www.monroeprosecutor.us/criminal-justice/adult-protective-services/ (last visited Apr. 28, 2016); *Adult Protective Services*, http://www.madisoncty.com/Prosecutor_Community_Adult.html (last visited Apr. 28, 2016); *Adult Protective Services Unit 3*, *APS Brochure*, http://www.allencountyprosecutor.com/aps%20brochure.pdf.

medical or other public or private institution . . . [or] facility"). Whistleblower retaliation is also expressly prohibited: "An employer may not discharge, demote, transfer, prepare a negative work performance evaluation, or reduce benefits, pay, or work privileges, or take any other action to retaliate against an employee who in good faith files a report" of an endangered adult. *Id.* § 12-10-3-11(c). Relevant to the *Frampton* analysis, the statute does not provide any remedy for the retaliation that it prohibits. *See Carver v. Elec. Data Sys. Corp.*, No. 1:03-CV-1033-DFH-VSS, 2005 WL 552466, at *7 (S.D. Ind. Feb. 11, 2005) (noting that the lack of any effective remedy for retaliation might otherwise negate the protections of the statute, thereby increasing the relevance of the *Frampton* analysis). The Plaintiff has no legal recourse unless a common law wrongful discharge claim is recognized.

With a clear public policy that favors reporting potential elder abuse, and no statutory remedy to address retaliation that would hinder such reporting by those who are most likely to witness it, the Court has no trouble borrowing from the reasoning of *Frampton*. If adult care facilities are permitted to penalize employees for bringing to their attention cases of abuse or neglect of vulnerable residents, a most important public policy will be undermined. The fear of being discharged would have a deleterious effect on the exercise of a statutory duty.[3] Employees will not report abuse—opting, instead, to continue their employment without incident. The end result is that the elder care facility is effectively relieved of its obligation to make a report to law enforcement or adult protective services, as contemplated by the statute. For the goals of APS to be realized and for public policy to be effectuated, the employee must be able to exercise his

---

[3] In *Frampton*, the court found that the fear of discharge would have a deleterious effect on the exercise of a statutory right, rather than a statutory duty. 297 N.E.2d at 427. This Court does not find that distinction meaningful. Just as a statutory right can implicate important public policy concerns, so can a statutory duty. Here, the State of Indiana has clearly articulated that reporting is mandatory.

duty to report abuse and neglect in an unfettered fashion without being subject to reprisal. For these reasons, the Court finds that the Indiana Supreme Court would most likely create an exception to the employment at will doctrine under the facts of this case.

One of the Defendant's argument for dismissal of the Plaintiff's wrongful discharge claim is that the Plaintiff did not actually fulfill the statutory requirements for reporting elder abuse before she was terminated from her employment. But if the Plaintiff was terminated in response to notifying the individual in charge of the Defendant's facility that a resident was being abused, it makes no difference to the public policy inquiry whether the Plaintiff had completed the reporting process contemplated by the statute. Whether the Plaintiff will be able to prove her allegations are for another day. For now, it is sufficient to find that the Plaintiff's (Revised) Second Amended Complaint states a claim upon which relief may be granted.

## CONCLUSION

For the reasons stated above, the Court GRANTS the Plaintiff's Motion to Substitute [ECF No. 24], and DENIES as MOOT the Defendant's Motion to Dismiss Amended Complaint [ECF No. 15] and the Plaintiff's Motion for Leave to File Second Amended Complaint [ECF No. 19]. The Clerk of Court is DIRECTED to docket the (Revised) Second Amended Complaint [ECF No. 24-1] as a separate entry.

SO ORDERED on April 28, 2016.

    s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT